UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

-v-

GJETO PRELAJ,

Defendant.

No. 16-cr-55-1 (RJS)
ORDER

RICHARD J. SULLIVAN, Circuit Judge:

The Court is in receipt of Defendant's renewed motion for compassionate release from custody set forth in the attached letters from Defendant dated May 21, 2020 and May 22, 2020 but received in chambers on June 18, 2020.  IT IS HEREBY ORDERED THAT the government shall file a letter by Wednesday, June 24, 2020 setting forth its position on Defendant's renewed motion for compassionate release.  The Clerk of Court is respectfully directed to mail a copy of this order to Defendant.

SO ORDERED.

Dated:   June 18, 2020
         New York, New York

_____
RICHARD J. SULLIVAN
UNITED STATES CIRCUIT JUDGE
Sitting by Designation

May 21, 2020

Gjeto Prelaj
#77104-054
LSCI Allenwood
P.O. Box 1000
White Deer, PA 17887

The Honorable Judge Sullivan
U.S. District Court For
The Southern District of New York
500 Pearl St.
New York, NY 10007

Re: Compassionate Release in Case No.: 1:16-CR-00055-RJS

Your Honor,

Approximately two weeks ago, you denied my letter-motion for Compassionate Release because I did NOT supply you with my Warden's denial. IN FACT, I sought relief from the Warden on 04/11/2020. I was denied home confinement on 04/14/2020, and for the past month, I have sought a copy of my denial for compassionate release. Finally, today, I was provided with that copy, and I have enclosed it with this letter so that it can be properly docketed.

In the next few days, you will receive a formal pro se motion for compassionate release. When preparing that MOTION, I did NOT have this denial in hand. Thus, with this letter, you, your honor, will have everything required to reconsider my compassionate release request.

In closing, with this denial, you now have the impediment removed that caused your prior denial. Thus, if this letter & denial suffice, I seek your reconsideration in this matter as swiftly as possible once the motion is received. Thank you for a prompt reply in this matter.

Respectfully,

Gjeto Prelaj

PRELAJ, Gjeto
Register No.: 77104-054
Gregg B
Page 1

---

**Inmate Request to Staff Response**

This is in response to your Request to Staff received on May 8, 2020, wherein you request a Compassionate Release/Reduction in Sentence (RIS) based upon Specific Extraordinary and Compelling Circumstances, specifically, you claim underlying health issues and concerns about COVID-19.

Title 18 of the United States Code, section 3582(c)(1)(A), allows a sentencing court, on motion of the Director of the BOP, to reduce a term of imprisonment for extraordinary or compelling reasons. BOP Program Statement No. 5050.50, <u>Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582(c)(1)(A) and 4205(g)</u>, provides guidance on the types of circumstances that present extraordinary or compelling reasons, such as the inmate's terminal medical condition; debilitated medical condition; status as a "new law" elderly inmate, an elderly inmate with medical conditions, or an "other elderly inmate"; the death or incapacitation of the family member caregiver of the inmate's child; or the incapacitation of the inmate's spouse or registered partner. Your request has been evaluated consistent with this general guidance. Health Services staff have reviewed your medical records and determined you do not meet the criteria for a compassionate release/reduction in sentence at this time.

The BOP is taking extraordinary measures to contain the spread of COVID-19 and treat any affected inmates. We recognize that you, like all of us, have legitimate concerns and fears about the spread and effects of the virus. However, your concern about being potentially exposed to, or possibly contracting COVID-19 does not currently warrant an early release from your sentence. Accordingly, your RIS request is denied at this time.

I trust this information is responsive to your inquiry.

5·20·2020
Date

for
D. K. White
Warden

IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF NEW YORK

GJETO PRELAJ,                )

("MOVANT"),                  )

V.                   ) CASE NO: 1:16-cr-000055-RJS

United States of America,     )

("RESPONDENT").              )

EMERGENCY MOTION FOR COMPASSIONATE RELEASE UNDER 18 U.S.C. 3582(c)(1)(A)(i)

COMES NOW, GJETO PRELAJ ("MOVANT"), pro se, with this motion for compassionate release under 18 U.S.C. 3582(c)(1)(A)(i), due to his MOVANT meeting the criteria for several "Extraordinary & Compelling" factors that would justify a modification of his sentence to Time Served. In support of this motion, MOVANT presents the following:

I. SUMMARY

1. MOVANT has served approximately 75% of his 54-month term of incarceration in various Federal Prisons. He has approximately 12-months remaining on his sentence, and he is currently located at LSCI Allenwood. At the termination of MOVANT's sentence, he will be transferred to ICE/INS custody, as he has an immigration detainer. However, MOVANT is classified as a "Special Immigrant," due to his asylum status, but the reality is that, at the end of his 54-month prison term, MOVANT will face further incarceration until his immigration issues are resolved.

2. MOVANT has several high-risk factors for Corona-Virus-Disease-SARS-2019 (COVID-19), which puts him at a high-mortality risk should he be exposed to the virus while within confinement. The high-risk factors that MOVANT has, which are confirmed via MOVANT's external medical records and Federal Bureau of Prisons (FBOP) files, are as follows: Diabetes, Obesity, and High Cholesterol (heart disease). These factors are labelled high-risk by the CDC.gov website.

3. In early April 2020, MOVANT contacted this honorable court via a motion-letter seeking compassionate release, but that relief was erroneously denied. The denial was based on MOVANT not seeking compassionate release/home confinement from the warden at LSCI Allenwood. This is not true. MOVANT sought compassionate release/home confinement from the warden, D.K. White, at LSCI Allenwood, on April 11, 2020, and MOVANT was denied by the warden on April 14, 2020. Therefore, MOVANT humbly asks this court to reconsider the prior letter-motion via this expanded emergency motion, as the prior motion's reason for denial was incorrect.

4. MOVANT is seeking that his current federal sentence be reduced to Time Served so that he can move onto his immigration issue as quickly as possible, which will allow him to minimize his amount of time in custody and which will maximize his health.

II. BACKGROUND

5. On May 27, 2017, MOVANT was sentenced to 54-months of incarceration from Aggravated Identity Theft and Access Device Fraud.

6. On September 11, 2017, MOVANT SELF SURRENDERED to the FBOP in order to start service of his sentence. Of note: it is extremely important to note that MOVANT knew he would receive an immigration detainer, yet, voluntarily self surrendered to the FBOP.

7. On September 14, 2017, Immigration & Customs Enforcement (ICE) and the Immigration & Naturalization Services (INS) put a detainer on MOVANT, as he is subject to removal proceedings. However, MOVANT was granted "Special Immigrant" status via his granting of asylum in 2015, and as such, his removal will be moot once properly adjudicated.

8. On March 26, 2020, April 1, 2020, and April 3, 2020, Attorney General William Barr ordered the FBOP to begin implementing programs to remove high-risk inmates from the Federal prison population. Throught April and May, with the latest revision dated May 11, 2020, the FBOP has adopted six criteria for home confinement eligibility. MOVANT meets this eligibility except for the detainer placed on him from ICE/INS, which is the reason for the Warden's denial.

9. On March 27, 2020, the law-making bodies of the United States passed the CARES ACT, which gave the FBOP the authority to place an inmate on home confinement for the remainder of their sentence.

IV. MEMORANDA OF LAW

14. The CDC has identified numerous high risk factors for COVID-19 mortality (CDC.gov). Within this list of several conditions are: diabetes, obesity, and heart disease. MOVANT has been diagnosed in his medical history with those three aforementioned diseases, and most relevant, they are CURRENT diseases on file with the FBOP, which makes verification easy should this honorable court request such.

15. Via Attorney General William Barr's memorandums, the courts have been advised to use the Compassionate Release Mechanism under the First Step Act's 18 U.S.C. 3582 (c)(1)(A)(i) in order to release high-risk COVID-19 inmates like MOVANT.

16. Under 18 U.S.C. 3582 (c)(1)(A)(i), compassionate release can be granted for "Extraordinary and Compelling Reasons." Because of the threat to MOVANT's mortality, which is exacerbated by his underlying "high-risk illnesses," should MOVANT contract COVID-19, "Extraordinary and Compelling Reasons" exist, which is supported by the case law in Paragraph (17) below.

17. To date, several courts, including this honorable court, have granted compassionate release to inmatse due to COVID-19, and in doing so, those courts have named COVID-19, itself, an "Extraordinary and Compelling Reason" to justify release under the compassionate release mechanism of the First Step Act. Applicable Case Law is as follows:

(A) United States v. Perez, No. 19 CR 297 (PAE), 2020 WL 1329225, at 1*, S.D. of New York, 03/19/2020: "Releasing defendant due to the 'heightened risk of dangerous complication should he contract COVID-19'."

(B) United States v. Stephens, 2020 WL 1295155, F. Supp 3d, S.D. of New York, 03/19/2020: "Releasing defendant in light of the 'unprecedented and extraordinarily dangerous nature of the COVID-19 pandemic'."

(C) United States v. Rodriguez, No. 2:03-CR-271-AB, Dkt. No. 135, E.D. of Pennsylvania, 04/01/2020: "Granting relief after finding risk factors for COVID-19 constitute Extraordinary and Compelling Reasons, and nothing that prisons are 'tinderboxes of infectious disease'."

18. Because the FBOP is under lock-down, MOVANT does not have access to more relevant case law material, but the above citations should alleviate the court's pressure in setting a precedent, due to COVID-19, because, clearly, several precedents already exist. Ergo, MOVANT hopes that this court will simply follow the case laws already set forth by this district court.

19. As part of applying for Compassionate Release under 18 U.S.C. 3582(c)(1), MOVANT is required to give the Warden of his institution 30-days in granting or denying a compassionate release request. MOVANT has requested compassionate release and/or home confinement back in April 11, 2020, and MOVANT has been denied.

20. It is not necessary for MOVANT to exhaust his Administrative Remedies in this matter because, as other courts have ruled, as in the above referenced cases, this is a time sensitive issue with MOVANT's life at stake.

21. Aside from the COVID-19 citations herein, there also needs to be an analysis done by this court as to the benefits of keeping MOVANT in federal prison for the remainder of his sentence versus granting this compassionate release request. MOVANT has readily accepted responsibility for his actions, and he has served a majority of his sentence. He has apologized to this court, to his family, and to the community he has harmed, but the reality is that MOVANT has a non-violent crime. Due to COVID-19, MOVANT's life is at stake for this non-violent crime. MOVANT does not mean to mitigate the severity of his federal offense, but with nearly 75% of his time served, MOVANT asks the court to also factor in his forthcoming immigration issues. By granting this compassionate release request, MOVANT will NOT be released to the public, as he will be transferred to ICE custody, and DUE to his COVID-19 mortality risk factors, this court and the agencies holding MOVANT should do everything in their power to minimize MOVANT's time in confinement. In all likelihood, MOVANT will spend 6-12 months in ICE custody, which is what is approximately left on his federal sentence. Further, since MOVANT self surrendered to the FBOP, MOVANT asks this court to see that this additional time is effectively akin to a double punishment, and this court can remedy this injustice by granting this compassionate release. Once granted, MOVANT will end up spending the same amount of time incarcerated that this court intended.

22. Further, due to MOVANT's ICE detainer, MOVANT is not eligible for 6-12 months halfway house via the Second Chance Act; nor is MOVANT able to be placed directly on home confinement under the new CARES ACT. Thus the fact remains that if MOVANT did not have his ICE detainer, he would likely be released from the FBOP's custody. This irony should not be lost on this honorable court, and as quoted above, being placed in this prison environment is like beint in a "tinderbox." Therefore, when doing an equitable comparison of justice, MOVANT cites one last case reference: United States v. Perez (1:17-CR-513-AT, Dkt. No. 98, S.D. of New York, 04/01/2020). This case is different than the other Perez case reference, but this case bares quoting because it was also a decision rendered in this district court. In the case, compassionate release was granted because "the benefits of keeping [PEREZ] in prison for the remainder of his sentence are minimal, and the potential consequences for doing so are extraordinarily grave." Likewise, for MOVANT, with over 75% of his time served, with his pending ICE issues, and with the fact that if not for that ICE detainer, MOVANT would likely be released to the community, there seems little value in keeping MOVANT incarcerated for the remaining 12-months of his federal sentence.

V. CONCLUSION

23. In closing, MOVANT meets all criteria for immediate release from prison under various statutory laws, but his ICE detainer is preventing his release at a potential cost to MOVANT's health. Therefore, this court needs to intervene in order to correct this glaring injustice, and this court should be aware that if it decides to grant this relief, this court will aid in minimizing MOVANT's exposure to the prison environment while maximizing the safety to his health. Thus, MOVANT asks the court to weigh his remaining 12-months of federal time for a non-violent crime versus a serious risk to his life, when rendering this decision.

24. And lastly, on a personal note, as stated in MOVANT's original motion-letter to this court, his family desperately needs him to get home as soon as possible. During the latter half of April, MOVANT's brother contracted COVID-19, and had to self-quarantine. He is no longer contagious, but he has lasting effects. The threat of this disease is real, and MOVANT prays that this court grants the relief so that he can protect his health and so that he can also be of assistance to his family.

Respectfully submitted this 22 day of May, 2020, by,

*Gjeto Prelaj*

GJETO PRELAJ - MOVANT

Artan Prelaj
71 Balmville Rd
Newburgh, N.Y. 12550

USM-SDNY

7019 0700 0000 0185 9089

CERTIFIED MAIL



U.S. POSTAGE PAID
FCM LG ENV
NEWBURGH, NY
12550
MAY 22, 20
AMOUNT
$4.75
R2305K136203-02

Honorable Richard J. Sullivan
United States Court of Appeals
for the Second Circuit
40 Centre Street, N.Y., NY 10007